Hector RIVAS, Petitioner–Appellant,

v.

Brian FISCHER, Superintendent, Sing Sing Correctional Facility, Respondent–Appellee.

No. 05–1779–pr.

United States Court of Appeals, Second Circuit.

Oct. 2, 2008.

Richard Langone (Anthony La Pinta, on the brief), Reynolds, Caronia, Gianelli, Hagney, La Pinta & Hargraves, LLP, Hauppauge, NY, for Petitioner–Appellant.

Malancha Chanda, Assistant Attorney General of the State of New York (Andrew M. Cuomo, Attorney General of the State of New York, on the brief; Roseann B. Mackechnie, Deputy Solicitor General for Criminal Matters, of counsel) New York, NY, for Respondent–Appellee.

PRESENT: JOSÉ A. CABRANES, ROSEMARY S. POOLER and ROBERT D. SACK, Circuit Judges.

## SUMMARY ORDER

Petitioner-appellant Hector Rivas appeals from a January 28, 2005 decision and order of the District Court that dismissed as untimely his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We assume the parties' familiarity with the facts, the issues raised on appeal, and the procedural history of the case.

The facts relevant to our review are as follows. A jury of the New York State Supreme Court for Onondaga County convicted Rivas of the murder of Valerie Hill in March 1993. On May 13, 1993, Rivas was sentenced to an indeterminate term of twenty-five years to life imprisonment. Rivas's state conviction became final on November 13, 1995. On July 12, 1999,

Rivas filed a state post-conviction motion, *see* N.Y.Crim. Proc. Law § 440.10, seeking to vacate his judgment of conviction on the basis of evidence he claimed to have newly discovered. Following an evidentiary hearing on the merits of his claim, the state trial court denied Rivas's motion. On February 15, 2001, the Appellate Division denied Rivas leave to appeal the denial of his state post-conviction motion. On December 12, 2001, Rivas, with the assistance of counsel, filed a petition for a writ of habeas corpus in the District Court raising substantially the same claims as he raised in his state post-conviction motion.

The Anti–Terrorism and Effective Death Penalty Act ("AEDPA") establishes a one year limitations period for state prisoners seeking to file petitions for habeas corpus. 28 U.S.C. § 2244(d)(1). In cases where a prisoner's claim has its basis in newly discovered evidence and the prisoner's conviction became final prior to AEDPA's effective date of April 24, 1996, the relevant limitations period runs from the *later of* (1) April 24, 1997, *see Hizbullahankhamon v. Walker*, 255 F.3d 65, 69 (2d Cir.2001) (construing the limitations period established by 28 U.S.C. § 2244(d)(1)(A)), or (2) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," *see id.* § 2244(d)(1)(D).

Rivas filed his federal habeas petition on December 12, 2001. Pursuant to 28 U.S.C. § 2244(d)(1)(D), the claims that Rivas raises must not have been discoverable "through the exercise of due diligence" more than 365 days beforehand—taking into account, however, the fact that AEDPA's limitations period was tolled while Rivas's state post-conviction motion was pending in state court. *See, e.g., Belot v. Burge*, 490 F.3d 201, 204 (2d Cir.2007).

Three hundred days of the one-year limitations period elapsed between the final denial of Rivas's state post-conviction motion (February 15, 2001) and the date on which he filed his federal habeas petition (December 12, 2001). From July 12, 1999 until February 15, 2001—the period during which Rivas's state post-conviction motion was pending in state court—the limitations period was tolled. Counting back sixty-five days from the date when Rivas filed his state post-conviction petition (July 12, 1999) yields May 8, 1999. Accordingly, to be timely by the standards of 28 U.S.C. § 2244(d)(1)(D), Rivas's claims must not have been discoverable "through the exercise of due diligence" before May 8, 1999.

Rivas's petition for habeas corpus raises, *inter alia*, the following claims: (1) Rivas is entitled to a new trial in light of newly discovered evidence that suggests that the prosecutor knew of false testimony provided by a prosecution witness; (2) the prosecution failed to provide the defense with *Brady* material; (3) Rivas received ineffective assistance of counsel at his original trial. Rivas contends that this petition was timely filed because he did not obtain the evidence that comprises the factual predicate for these claims until June 1999. In support of these claims, Rivas has proffered, *inter alia*, an affidavit he received on June 11, 1999 from Dr. Cyril Wecht—a medical examiner that Rivas's family retained to analyze the autopsy report on Valerie Hill shortly after the report was made available to Rivas—and an affidavit he received from his trial counsel dated June 7, 1999. Rivas argues that this evidence provides factual predicates for some or all of his claims.

The District Court dismissed Rivas's claims as time-barred under 28 U.S.C. § 2244(d)(1)(D). We are unable to review this determination, however, because (1) "the date on which the limitation clock beg[ins] to tick is a fact-specific issue," *Wims v. United States*, 225 F.3d 186, 190 (2d Cir.2000), and (2) the District Court

did not develop a record as to (a) whether "a duly diligent person in petitioner's circumstances" would have discovered the evidence proffered by Rivas before May 8, 1999, *id.,* or (b) whether this evidence provides factual predicates for any of Rivas's habeas claims. Therefore, without expressing a view as to the merits of Rivas's claims, we remand in order for the District Court to make specific factual findings regarding at least these questions, with particular attention to Rivas's due diligence in obtaining the affidavits of Dr. Wecht and Rivas's trial counsel, as well as facts underlying those affidavits. In making these findings, the District Court should take into account our observations in *Poindexter v. Nash,* 333 F.3d 372, 379 (2d Cir.2003) (equating the "factual predicate" of a claim with the facts "relevant" to and "underlying" that claim), and *Wims,* 225 F.3d at 190 n. 4 (observing that "[t]he mere fact that ... it was possible for [the petitioner] to ascertain the [factual predicate of his claim]" earlier than he did "is not dispositive" because AEDPA "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence "). *See also id.* at 190–91 (holding that the resolution of the questions of whether a duly diligent petitioner would have discovered the information "depends, among other things, ... on the conditions of [the petitioner's] confinement" and citing *Easterwood v. Champion,* 213 F.3d 1321, 1323 (10th Cir.2000) for the proposition that the evaluation of due diligence "may not ignore[ ] the reality of the prison system"); *Wims,* 225 F.3d at 190 (noting that the District Court erred by focusing on petitioner's conduct beginning on the day of AEDPA's passage because "the district court's approach deprived petitioner of the one year during which, under AEDPA, he was entitled to rest on his claim.").

If the District Court determines that Rivas has not satisfied the due diligence requirements of 28 U.S.C. § 2244(d)(1)(D),

the District Court should then make specific findings as to whether Rivas has established a credible claim of actual innocence under the standards set forth in *House v. Bell,* 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) and *Doe v. Menefee,* 391 F.3d 147 (2d Cir.2004). If conducting this inquiry, the District Court may wish to examine the "likely credibility of the affiants," *Schlup v. Delo,* 513 U.S. 298, 332, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and other witnesses at Rivas's trial, and the relative strength of the State's case against Rivas in light of any credibility determinations that the District Court sees fit to make.

In conducting both of these inquiries, the District Court should hold an evidentiary hearing limited to the issue of the timeliness of Rivas's petition, but should be mindful that "under 28 U.S.C. § 2254(d), a federal habeas court 'is required to give deference to findings of fact made by the state court after a full and fair hearing at which the material facts were adequately developed, unless the federal court concludes that the record as a whole does not fairly support the state court's factual determination.' " *Oyague v. Artuz,* 393 F.3d 99, 104 (2d Cir.2004) (quoting *Matusiak v. Kelly,* 786 F.2d 536, 543 (2d Cir.1986)). In the evidentiary hearing, the petitioner should be allowed, subject to the District Court's sound discretion, to submit whatever evidence he has establishing that he acted with diligence in obtaining the factual predicates for his habeas claims and nothing in this order should be construed to limit the type of evidence that the petitioner might adduce or attempt to rely upon.

### CONCLUSION

For the reasons stated above, we **VACATE** the District Court's January 28, 2005 and order, and **REMAND** the cause

to the District Court for further proceedings consistent with this order.

We direct that the mandate shall issue forthwith and that jurisdiction shall be returned to this Court, pursuant to *United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir.1994), upon a letter request from any party. Upon such a restoration of jurisdiction, the matter is to be referred to this panel. We further direct that appellate counsel shall be appointed for any further appellate proceedings, and encourage the District Court to appoint counsel itself to aid development of the record as we have directed.